CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 12 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| DOROTHY E. CONSTABLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 5:11cv00023 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal is before the court for review of the Supplemental Report and Recommendation issued in this case by the magistrate judge on April 10, 2012. For the reasons set forth below, the Supplemental Report and Recommendation is **ADOPTED**, the plaintiff's motion for summary judgment (Dkt. # 11) is **GRANTED**, the Commissioner's motion for summary judgment (Dkt. # 17) is **DENIED**, and this case is **REMANDED** to the Commissioner for further consideration consistent herewith pursuant to sentence four of 42 U.S.C. § 405(g).

I.

This matter was referred to the magistrate judge for proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) on June 9, 2011. The parties filed cross motions for summary judgment and supporting memoranda and the magistrate judge issued his Report and Recommendation on November 17, 2011. By Order dated April 3, 2012, the court referred this matter back to the magistrate judge for an assessment of the administrative law judge's ("ALJ") conclusion at step five of the sequential evaluation process. In a Supplemental Report and Recommendation issued April 10, 2012, the magistrate judge recommended once again that this case be remanded to the Commissioner pursuant to sentence

four of 42 U.S.C. § 405(g) for further consideration. According to the magistrate judge, remand is necessary because the ALJ did not properly consider plaintiff's osteoporosis which caused work-related limitations. The magistrate judge placed significant emphasis on the medical report prepared by the consultative medical examiner, Christopher Newell, M.D., who found that plaintiff experienced postural limitations caused by the osteoporosis in her spine. The magistrate judge noted that the record reveals that the limitations caused by plaintiff's osteoporosis are more than minimal and significantly limit her ability to perform work activities. The magistrate judge recommended that the case be remanded to the Commissioner to appropriately consider plaintiff's osteoporosis.

Under 28 U.S.C. § 636(b)(1), the "court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Federal Rule of Civil Procedure 72(b) provides the parties with an opportunity to file written objections to the proposed findings and recommendations, but neither party filed objections in this case to either the November 17, 2011 Report and Recommendation or to the April 10, 2012 Supplemental Report and Recommendation. Rule 72(b)(3) provides that the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." While the text of the rule is silent as to the obligation of the court if no objection is made, the advisory committee notes that "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974)). In Thomas v. Arn, 474 U.S. 140 (1985), the Supreme Court had occasion to address the issue, and stated as follows:

> The district judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter

judgment. Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

474 U.S. at 154. Thus, even absent an objection, the court retains the ability to review sua sponte a magistrate judge's report and recommendation.

## II.

Having carefully reviewed the administrative record in this case, the court finds that the Supplemental Report and Recommendation should be adopted and the case remanded to the Commissioner for the following three reasons.

## A.

First, it is clear from plaintiff's treatment records that she suffers from severe osteoporosis, and this condition needs to be thoroughly evaluated by the Commissioner on remand. Plaintiff's medical records repeatedly refer to her osteoporosis. Each of the state agency physician reports indicate "[t]he medical evidence establishes medically determinable impairments of Osteoporosis and degenerative back disorder." (Administrative Record "R." at 353, 375, 394.) Plaintiff's treating physician ordered a DEXA bone densitometry[1] dated July 3, 2007, which indicated that "[t]he patient meets WHO[2] criteria for osteoporosis." (R. 294.) The consultative examining report prepared by Dr. Newell notes the existence of "postural limitations to bending, stooping and squatting due to her osteoporosis in her spine," (R. 385-86), and limitations in her ability to do repetitive manipulations on a frequent basis due to the osteoporosis in her wrist. (R. 386.) Given these assessments, it is difficult to see how the ALJ could have concluded that plaintiff's osteoporosis was not severe. To qualify as "severe," an

---

[1] DEXA refers to dual energy x-ray absorpiometry, an imaging system used to assess bone mineral density.
[2] WHO refers to the World Health Organization, the directing and coordinating authority on international health within the United Nations' system.

3

impairment or combination of impairments must significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include certain physical functions (e.g. walking, sitting, standing); seeing, hearing, or speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. The residual functional capacity assessments of all four state agency physicians in this case concluded that plaintiff's ability to work was significantly limited, either to the light or less than sedentary levels. It simply cannot be credibly maintained that plaintiff's osteoporosis did not reach the severe threshold.

### B.

Second, this case is unusual in that there are conflicting opinions by multiple state agency physicians as to plaintiff's residual functional capacity. On September 11, 2007, Dr. R.S. Kadian concluded based on a review of plaintiff's medical records that plaintiff was capable of working at the light level of exertion. (R. 347-52.) Three months later, on December 14, 2007, Dr. Syed Hassan disagreed, finding that upon review of plaintiff's medical records that she was capable of working at the sedentary level with additional reaching and handling limitations. (R. 370-75.) Just four days later, Dr. William Amos, at the request of the SSA examiner, weighed in and reaffirmed Dr. Kadian's earlier residual functional capacity evaluation of light work with an additional limitation of no overhead lifting. (R. 377-78.)

The Commissioner then took the additional step of requesting that the Virginia Department of Rehabilitative Services perform a consultative examination. Dr. Christopher Newell examined plaintiff on January 8, 2008. Dr. Newell's examination report noted plaintiff's history of osteoporosis, osteoarthritis, chronic daily headaches and fibromyalgia. The report also noted a July 2007 lumbar MRI showing diffuse lumbar spondylosis and the result of a DEXA

4

scan indicating osteoporosis in the lumbar spine and wrist. On examination, Dr. Newell found plaintiff to "have trigger points in the suboccipital, trapezius, SI, trochanteric, medial knee, anterior chest, medial elbow areas and over the bilateral forearm areas. This is consistent with fibromyalgia. I count 18/18 trigger points." (R. 385.) Dr. Newell's note continued:

> Examination of the cervical spine reveals midline tenderness from C3 down to C7 with some cervical crepitance with range of motion. There is decreased cervical range of motion. There is bilateral paracervical muscle tenderness, spasm. There is bilateral trapezius tenderness and spasm. There is midline tenderness over T4-T5 and T10, T11 and T12. There is diffuse lumbrosacral tenderness with loss of the lumbar lordosis. Negative straight leg raise bilaterally. Decreased dorsolumbar range of motion. There is some decreased range of motion of the shoulders but otherwise upper extremity is normal. There is good range of motion of the lower extremity joints. There is diffuse weakness due to generalized pain, deconditioning, osteoporosis.

(R. 385.) Based on his examination, Dr. Newell limited plaintiff to 2-4 hours of standing and walking in an 8 hour workday. He limited her sitting to 4-6 hours. He limited her lifting and carrying to 10 pounds frequently and 10-15 pounds occasionally. Dr. Newell included a postural limitation with respect to bending, stooping and squatting due to her osteoporosis in her spine. He limited her to occasional reaching, no overhead reaching and occasional handling, feeling, grasping and fingering. Finally, Dr. Newell opined that plaintiff could not do repetitive manipulations on a frequent basis due to her DEXA osteoporosis score. (R. 385-86.) Dr. Newell's report generally confirms the residual functional capacity found by Dr. Hassan.

Seven days later, on January 16, 2008, Dr. Amos signed another RFC form stating plaintiff had the capacity to perform light work. In the narrative portion of this RFC form, Dr. Amos is critical of Dr. Newell's evaluation, concluding that "[s]ome of the opinions cited in the report are viewed as an overestimate of the severity of the claimant's functional restrictions," (R. 394), and he suggests that Dr. Newell's report is "only a snapshot of the claimant's functioning

5

and is an overestimate of the severity of her limitations." (R. 395.) At the end of the day, therefore, there are two state agency doctors who concluded that plaintiff could do light work and two, including the only examining doctor, who found that she is limited to less than sedentary work.

The ALJ "adopted the assessments of DDS Drs. Kadian and Amos because they are consistent with the other credible evidence of record," and concluded that "the opinions of Drs. Hassan and Newell are not supported by the weight of the evidence." (R. 88.) Given plaintiff's well documented history of osteoporosis, lumbar degenerative disc disease and migraine headaches throughout her treatment records, it is difficult to understand how the ALJ could have reached this conclusion. Certainly, the ALJ's decision provides no reasoned basis for accepting the opinions of Drs. Kadian and Amos over that of Dr. Newell, who actually examined plaintiff, and Dr. Hassan.

Given the dueling assessments of the state agency physicians, it is difficult as well to understand the ease with which the ALJ dismissed the opinions of plaintiff's long time treating physician, Dr. Danny L. Perry. The ALJ rejected Dr. Perry's disability opinions, dismissing his treatment notes as "boilerplate," (R. 79, 86), and speculating that his disability opinions were motivated by an "advocacy role." (R. 82.) In sum, in deciding that plaintiff could still perform light work, the ALJ adopted the opinions of two state agency doctors who never saw plaintiff over the views of three other doctors, one of whom examined plaintiff and one of whom treated her for several years. The ALJ's decision contains no persuasive reason for rejecting the views of the examining and treating physicians in this case, especially where those opinions are based on clinical judgments and objective reports such as the DEXA study and a 2007 lumbar MRI. Under these circumstances, the court is compelled to conclude that the ALJ's decision to assign a residual functional capacity at the light work level runs afoul of the treating physician rule and is

6

not supported by substantial evidence. See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (explaining that courts typically "accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant"); 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources").

### C.

Finally, the Appeals Council declined to consider the medical records submitted to it, concluding that they related to a period after the ALJ's decision on December 18, 2009. While that is true, the medical records, including a new lumbar spine MRI dated July 22, 2010, certainly reflect continuation of the chronic, degenerative issues plaintiff has struggled with for years before the ALJ's decision. As such, they should be considered by the Commissioner on remand.

### III.

For these reasons, the Supplemental Report and Recommendation dated April 10, 2012 is **ADOPTED** and this case is **REMANDED** to the Commissioner for further consideration consistent herewith pursuant to sentence four of 42 U.S.C. § 405(g).

An appropriate Order will be entered.

Entered: June 11, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge